Stacy Allen (CA Bar #115338)
JACKSON WALKER, L.L.P.
100 Congress Ave., Suite 1100
Austin, Texas 78701
Telephone: (512) 236-2000
Fax: (512) 236-2001

Counsel for Petitioner Tesla, Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | | |
|---|---|---|
| TESLA, INC., a California corporation, | § | CASE NO: |
| | § | |
| | § | **PETITION TO VACATE FINAL ARBITRATION AWARD** |
| v. | § | |
| | § | |
| BEDESCHI AMERICA, INC. | § | |
| | § | |
| | § | |
| Respondent. | § | |

## PETITION TO VACATE ARBITRATION AWARD

Petitioner Tesla, Inc. ("Petitioner" or "Tesla") files this Petition to Vacate Arbitration Award pursuant to the Federal Arbitration Act, 9 U.S.C. § 10, *et seq.,* to vacate an arbitration award issued by a California arbitrator in favor of Respondent, Bedeschi America, Inc. ("Respondent" or "Bedeschi").

## PRELIMINARY STATEMENT

Pursuant to the FAA, this Petition is filed because the Arbitrator showed a manifest disregard of the law and exceeded his authority in violation of the FAA and the parties' agreement. The Arbitrator understood and correctly stated that law but simply proceeded to disregard it in material ways. Likewise, certain legally dispositive facts were so firmly established that the

Arbitrator's failure to recognize them manifestly disregarded undisputed facts and the law.  Instead, the Arbitrator imposed his own policy choices and thus exceeded his powers.

Tesla is an automotive and clean energy company, which undertook the development of a lithium refinery on a 1,200-acre site in Robstown, Texas ("Project"). Tesla approached Bedeschi, a Florida-based company, to provide material-handling equipment and services for the Project.

On January 20, 2023, Petitioner and Respondents entered into the "General Terms and Conditions for Procurement of Production Equipment and Services" ("GTC"). In the GTC, Tesla and Bedeschi agreed to certain terms governing the parties' relationship and future purchase orders.

After several rounds of negotiation, the Parties executed a Purchase Order in which Bedeschi contractually agreed to provide state-of-the-art equipment for the Project, which would be the first lithium refinery in the United States. After failing to timely deliver Tesla's equipment under the parties' contract, Tesla notified Bedeschi that it was in default. Following the notification of default, Bedeschi improperly raced to the courthouse and, on November 15, 2024, filed a lawsuit against Tesla in violation of the GTC's provisions on confidentiality and arbitration. The same day, Bedeschi filed a Demand for Arbitration.

On November 11, 2025, Bedeschi filed its Statement of Claims. Bedeschi alleged claims against Tesla for breach of contract, quantum meruit, violations of the Prompt Pay Act, and sought a foreclosure of lien. Tesla counterclaimed for breach of contract and sought declaratory relief that the lien is unenforceable.

Arbitrator Barry Baskin, a California licensed attorney and former California judge residing in this jurisdiction, was appointed by JAMS. Between January 26-28, 2026, the Arbitrator conducted the arbitration hearing ("Hearing") in Austin, Texas.[1] On April 30, 2026, the Arbitrator issued the Interim Award. Following denial of a motion for reconsideration, the Arbitrator issued the Final Award, which adopted the Interim Award and was well in excess of $75,000. The

---

[1] The Parties agreed to conduct the arbitration hearing in Austin, Texas, and applied Texas law to the arbitration proceeding itself and the elements of the underlying claims. There was no agreement to vary from the GTC, however, with respect to any post-arbitration proceeding. Consequently, the terms of the GTC apply California law and allows for judgment of the award to be had in any court of competent jurisdiction. California law applies to this Motion to Vacate, while Texas law applied to the underlying arbitration proceeding.

2

Arbitrator served a signed copy of the Final Award upon the Petitioner on July 6, 2026.[2] The Arbitrator resides in this venue and issued both awards from California.

Tesla seeks vacatur because the Award does not merely contain ordinary legal or factual error. The Award disregards controlling contract language and governing law in at least four principal respects: (1) it rests on the false premise that Tesla terminated the GTC when, in fact, the Interim Award and underlying record recognize that Tesla terminated only the Purchase Order, not the GTC; (2) contrary to the specific terms of the GTC, the Interim Award (which the final award adopted) substitutes a common-law gap-filler rule—the substantial completion doctrine—in place of the parties' bargained-for post-termination payment regime and then misapplies that framework, contrary to well-settled law about which the Arbitrator was aware but ignored; (3) it used Texas Property Code § 53.286 to void the GTC's protections, even though that statute voids only agreements purporting to *waive* lien rights and has never been applied by any court in the world in the manner it was applied in this case; and (4) it awarded Bedeschi broad litigation costs, expert fees, attorneys' expenses, and conditional future fees that are wholly barred by applicable law and the parties' agreement.

Accordingly, Tesla requests that the Court vacate the Award on the grounds that the Arbitrator exceeded his authority and showed a manifest disregard of the law. Petitioner hereby requests an award of its costs and attorneys' fees incurred in connection with this proceeding.

### PARTIES

Petitioner Tesla, Inc. is a Texas corporation with its principal place of business in Travis County, Texas.

Respondent Bedeschi America, Inc. is a Florida corporation with its principal place of business located in Palm Beach County, Florida. Bedeschi may be served through its authorized agent for service of process.

---

[2] The Award contains confidential information and thus it will be provided to the Court *in camera* for review.

**JURISDICTION AND VENUE**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), based on complete diversity of citizenship between the parties and an amount in controversy in excess of $75,000, exclusive of interest and costs.

Venue is proper in the United States District Court for the Northern District of California pursuant to the Parties' jurisdiction and venue-selection clause, which provides that the parties consent to jurisdiction of a court within a district that encompasses assets of a party against whom a judgment (or award) has been rendered. *See Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 63 (2013) ("The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.") (cleaned up). "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64. "Whatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17-18, (1972). Here, Tesla has assets within this district and thus jurisdiction and venue have been agreed to by the parties.

In addition, jurisdiction and venue are proper pursuant to 9 U.S.C. § 10(a), since this is the district where the award was made by the Arbitrator. This Court also has jurisdiction over Bedeschi because it agreed to jurisdiction and venue here in the agreement, acted under the agreement, the arbitration awards at issue were rendered in California, and upon information and belief, Bedeschi conducts business in California. *See* 28 U.S.C. § 1391. Further, at the time of contracting, Tesla had its principal place of business in California, so Bedeschi contracted with a California-based company, this dispute arises from that contract, Bedeschi maintained minimum contacts with

California, and upon information and belief, Bedeschi conducted systematic and continuous business in California. Bedeschi purposefully directed its activities and consummated its transactions with a California-based company, and this dispute arises from and relates to Bedeschi's contract with Tesla, which designated California law, required mediation in San Francisco, and mandated arbitration in Palo Alto.

**DIVISIONAL ASSIGNMENT**

Pursuant Civ. L.R. 3-5(b), and the allegations set forth above in the Jurisdictional section above, this matter should be assigned to the San Jose Division since the parties' agreement contemplated this location, the arbitration award was issued in the Northern District of California, and the Petitioner has assets in this Division.

**FACTUAL BACKGROUND**

Tesla seeks vacatur of the Final Arbitration Award (which adopted the Interim Award (collectively, "Award"), under 9 U.S.C. § 10 because the Arbitrator exceeded his authority and showed manifest disregard of the law. The Award rests on a foundational error, which treated Tesla's termination of a Purchase Order as though it were a termination of the parties' General Terms and Conditions. The Award then completely ignores the parties' contract and substitutes in its place common-law substantial-performance principles, misapplies Texas Property Code § 53.286 to void the parties' agreement, and awards fees and costs that are barred by applicable law. Because the Award ultimately contradicts the Arbitrator's own factual findings on dispositive facts, rewrites and largely ignores the parties' agreement, and wholly ignores that law, it exceeds the scope of the Arbitrator's delegated authority and should be vacated.

As background, Tesla and Bedeschi entered into the General Terms and Conditions for Procurement of Production Equipment and Services, under which Tesla could issue purchase orders for production equipment and services on January 20, 2023. The GTC provides that the general terms therein remain in effect until terminated by mutual agreement or by one of the termination mechanisms specifically enumerated.

5

More specifically, the GTC authorizes Tesla to terminate for material breach without affording Bedeschi additional cure time in specified circumstances, including where Bedeschi commits multiple breaches that Tesla determines have had an aggregate effect comparable to a material breach. The GTC expressly governs Tesla's post-termination payment obligations and provides that Tesla will pay only certain specified amounts, after offsetting amounts due from Bedeschi for setoffs and liquidated damages. Section 4.4 separately gives Tesla this setoff right against sums payable to Bedeschi for amounts Tesla determines in good faith that it is owed by Bedeschi.

The GTC's dispute-resolution clause provides for JAMS arbitration and gives the arbitrator power to interpret the Contract and fashion appropriate remedies. That grant of authority is expressly limited: the arbitrator has no authority to exceed that of a court having jurisdiction over the parties, no authority to award damages exceeding the types and limitations of damages found in the GTC, and no authority to modify the terms of the GTC.

After entering the GTC, the Parties extensively negotiated the terms of Purchase Order # 5100460822 ("Purchase Order" or "PO"). As reflected by the Purchase Order, Bedeschi contractually agreed to provide state-of-the-art equipment for a lithium refinery ("Project"), which would be the first lithium refinery in the United States. At the time, Bedeschi was aware and agreed that time was of the essence and that compliance with the Schedule and specifications was paramount. Specifically, after Bedeschi obtained several extensions, the PO required Bedeschi to complete delivery of the Contracted Items by March 1, 2024. After failing to timely deliver Tesla's equipment under the parties' contract, Tesla notified Bedeschi that it was in default. When Bedeschi failed to cure, Tesla terminated the PO (but not the GTC).

Following the notification of default, Bedeschi improperly raced to the courthouse and, on November 15, 2024, filed a lawsuit against Tesla which attached the PO, making the entire document public in violation of the GTC's provisions on confidentiality and arbitration. *See* Plaintiff's Original Petition Subject to Arbitration Demand, Cause No. 2024-DCV-5004-C, Nueces County, Texas. The same day, Bedeschi filed a Demand for Arbitration.

6

Bedeschi initiated arbitration under Section 15.7 of the parties' January 20, 2023, agreement. Bedeschi alleged that it furnished engineering services and construction materials for the Project in and that Tesla had not paid amounts Bedeschi claimed were owed. Tesla counterclaimed for breach of contract and declaratory relief, including a declaration that Bedeschi's lien was invalid and unenforceable and that the lien amount was incorrect.

After a three-day hearing in January 2026 and extensive post-hearing briefing, the Arbitrator issued an Interim Award on April 30, 2026. The Interim Award found in favor of Bedeschi on its breach-of-contract claim, awarded Bedeschi significant damages plus pre-award interest at 1.5% per month under Texas Property Code Chapter 28, declared Bedeschi's lien valid, denied Tesla all setoffs and counterclaims, and retained jurisdiction for fees and costs. Tesla timely filed objections and a motion for reconsideration identifying material factual and legal errors, including the Award's conclusion that Tesla terminated the GTC, its use of Texas Property Code § 53.286 to void the GTC, its cure and substantial-completion analysis, its denial of setoffs, and its denial of Tesla's liquidated damages.

On July 6, 2026, the Arbitrator issued the Final Award. The Final Award denied Tesla's objections and motion for reconsideration. The Final Award also granted Bedeschi's motion for fees and costs, plus conditional fees.

## **GROUNDS FOR VACATUR**

While an arbitrator has broad powers, his discretion is not unlimited.  Recognizing this, the Federal Arbitration Act provides grounds for review of an arbitration award. 9 U.S.C. § 10.

Under the FAA, a court may vacate an arbitration award, among other reasons, when "the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). In explaining when arbitrators exceed their powers, the Ninth Circuit has held that "[w]hen arbitrators rule on a matter not submitted to them, or act outside the scope of the parties' contractual agreement, the award may be overturned because the arbitrators exceeded the scope of their authority." *Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.,* 44 F.3d 826, 830 (9th Cir. 1995) (citing 9 U.S.C. § 10(a)(4)). The Ninth Circuit has gone on to hold that, under Section 10(a), arbitrators may also "exceed their powers" "not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational or

exhibits a manifest disregard of the law." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (internal quotations and citations omitted).

To show "manifest disregard of the law," one must establish that the "arbitrator understood and correctly stated that law, but proceeded to disregard the same." *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009); *see also EHM Prods. v. Starline Tours of Hollywood, Inc.*, 1 F.4th 1164, 1176 (9th Cir. 2021) (same).

Here, Tesla seeks vacatur because the Award rests on material contradictions and legal rulings that wholly disregard the terms of the GTC and applicable law, alters the parties' agreed remedies, and awards relief beyond the Arbitrator's delegated authority. As a result, the Award must be vacated.

**A.    Tesla Never Terminated the GTC; It Terminated the Purchase Order.**

The Award's central premise is that "Tesla committed a material breach when it terminated the Contract and then failed to pay Bedeschi the monies it was owed under the Contract [defined as the GTC] just two days later." Interim Award at 13. This is patently false. The Interim Award itself acknowledges in the "Facts" section that "Tesla terminated *the Purchase Order* (the most recent revision being from June 27, 2024—PO Rev. 12) for material breach. . . ." *Id.* at 11. This is consistent with testimony from Tesla's corporate representative, Willie Hodel, who confirmed this fact: "We terminated the purchase order." Tr. Vol. 3 at 727:8–10 ("Q: On September 12, 2024, you terminated Bedeschi, correct? A: We terminated the purchase order."). It is also consistent with the termination letter issued by Tesla in which it states that it "has determined to terminate Purchase Order 5100460822." In other words, it is clear the Arbitrator understood the distinction between the GTC and the PO—yet he ignored it for purposes of issuing his ruling. This error infects the entire Award.

This is not a mere disagreement with the Arbitrator's weighing of evidence. The Interim Award recognizes the operative fact—that Tesla terminated the *Purchase Order*—but imposed liability as if Tesla had terminated the GTC instead. That kind of internally contradictory finding on a legally dispositive fact supports vacatur where the fact is so obvious and central that the arbitrator cannot fail to recognize it without manifestly disregarding the law. *See Am. Postal*

*Workers Union v. United States Postal Serv.,* 682 F.2d 1280, 1284–86 (9th Cir. 1982), *cert. denied,* 459 U.S. 1200 (1983) (arbitrator's failure to recognize undisputed, legally dispositive facts was deemed a manifest disregard for the law). Tesla terminated the PO, not the GTC. So—contrary to the Award's ultimate conclusion—Tesla could not have "committed a material breach when it terminated the [GTC]," and the resulting conclusion that Tesla owes Bedeschi damages cannot stand. Because the Award's liability, damages, setoff, lien, and fee determinations flow from this incorrect premise, the Award exceeds the arbitrator's powers and should be vacated.

**B.    Improper Reliance on the Doctrine of Substantial Performance Alters the GTC.**

The Award fails to address the Parties' contractual agreement that "time [was] of the essence," instead relying on the inapplicable common-law substantial-performance doctrine. Its application is particularly inappropriate when the parties contracted for a specific post-termination payment regime as they did here. Specifically, Section 12.5(b) of the GTC provides that following termination, Tesla will pay "the applicable portions of the Purchase Price for milestones that Seller successfully achieved prior to the termination date" and "Seller's actual and reasonable out-of-pocket costs for materials delivered to Tesla."  This is a specific obligation delineated in the GTC. It is not ambiguous and, "absent compelling reasons, courts must respect and enforce the terms of a contract the parties have freely and voluntarily entered." *Pa. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 471 (Tex. 2016).

The Award did not enforce the formula prescribed by the GTC and agreed to by the Parties. Instead, the Arbitrator invoked the common-law doctrine of substantial performance and held that, because Bedeschi substantially completed its work, Bedeschi was entitled to the entire unpaid contract price. The Award even acknowledged Tesla's argument that Section 12.5(b) limited any recovery to milestones successfully achieved and out-of-pocket costs, but then completely ignored it. For reasons discussed below, that is wrong. But more critically for this request for vacatur, that approach rewrites Section 12.5(b) by converting a milestone-by-milestone, offset-sensitive payment clause into a common-law full-price remedy. In other words, the Arbitrator unilaterally overwrote a bargained-for allocation and modified critical terms of the GTC, which Section 15.7(c)

9

expressly forbids: the arbitrator "will not have any right or authority . . . to modify the terms of either the Contract or these General Terms." GTC § 15.7(c).

Not only did the Arbitrator violate the express terms of the GTC when he modified the post-termination payment obligations, the doctrine was not properly applied and the analysis fails on its own terms, despite the Arbitrator's clear awareness of the proper framework which he then chose to disregard. The Award stated that substantial completion entitles a contractor to the contract price less offsets for remediable defects. For example, under the substantial completion doctrine, the burden was on Bedeschi to establish and present evidence on how much it would reasonably cost to complete the parts of the contract that remained to be completed (because it is understood that the contract was only *substantially* complete, not actually complete), and the cost to remedy any defects in Bedeschi's existing work. Though he was aware of Bedeschi's legal burden, the Arbitrator improperly shifted the burden to Tesla to prove the offsets, remedy the defects, and establish the cost to complete the contract. The Award specifically notes that "Tesla did not meet its burden of proving it was entitled to any offsets." But the burden under the law is Bedeschi's, and the Arbitrator ignored it, improperly placing the burden to prove any offsets, remedy any defects, and the cost to complete the contract on Tesla, which he then incorrectly concludes Tesla failed to do. Contrary to the Award and even though the burden under the theory in the Award should have been Bedeschi's, Tesla proved multiple defects under Tesla's own theories of relief, which were required to be offset:

**Milestones 5 and 6 were never achieved.** The Contract's payment structure required six milestones. It is undisputed that Milestone 5 (completed delivery of equipment free of defects and liens) and Milestone 6 (site acceptance testing and run rate) were not completed. Hodel testified Milestone 5 required equipment "delivered without defect and without liens" and confirmed it "was not complete" before termination. *See* Tr. Vol. 2 at 478:10-16. Site acceptance testing—requiring 95% availability over a period of 14 consecutive production days—similarly did not occur. *See id.* at 480:10-14. That evidence was never contradicted.

**Documented equipment defects.** Hodel identified significant defects, including but not limited to: bucket elevator and belt conveyor issues (detailed in the Hargrove report), a backwards-

10

designed gearbox causing leaks, and multiple conveyor sections with quality issues causing major construction downtime. *See* Tr. Vol. 3 at 549:8-558:17; *id*. at 570:20-575:5; *id*. at 577:25-578:12; *id*. at 581:15-582:8. The Award never addressed this evidence. Substantial completion requires the owner receive the "object of their contract"; non-functional equipment is not that object.

**The "95% complete" assertion was self-serving and unverified.** The Arbitrator credited Bedeschi's July 10, 2024, email claiming "over 95% complete" and faulted Tesla for not responding to "refute or reject this assertion." But there is no contractual obligation to respond to a vendor's self-assessment of completion. Silence is not acceptance under the GTC and the Arbitrator improperly shifted the burden to Tesla to disprove Bedeschi's own self-serving claim when it had no obligation to do so. Even if the Arbitrator accepted Bedeschi's claim as true, that still leaves 5% of the work that would have needed to be completed, and for which Bedeschi should have been made to establish the cost to complete, to be entitled to any award under the substantial completion doctrine. Despite being aware of this requirement, the Arbitrator simply disregarded this burden and left it unaddressed.

The Ninth Circuit has vacated an award where the arbitrator recognized contractual requirements but avoided them because enforcing them seemed unfair. As the Ninth Circuit has held, "[w]hen an arbitrator disregards the plain text of a contract without legal justification simply to reach a result that he believes is just," judicial intervention is required. *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors, LLC*, 913 F.3d 1162, 1169 (9th Cir. 2019); *see also Pacific Motor Trucking Co. v. Automotive Machinists Union*, 702 F.2d 176 (9th Cir. 1983). In this case, judicial intervention is required because the Arbitrator chose to forgo contractual enforcement in favor of something he believed to be fairer to Bedeschi. The Award recognized Section 12.5(b) and recognized Tesla's setoff provisions, but the Arbitrator displaced those provisions with a common-law gap-filler remedy and broad equitable payment result despite the express limits on his power. This Court should vacate the award as a result.

**C.    The Texas Property Code Does *Not* Void the GTC, and the Finding is Entirely Unsupported.**

The Award states that "section 14 [Confidential Information] of the GTCs is void as a matter of law under Texas Property Code section 53.286" because it is overbroad as it "would not allow Bedeschi to file or enforce a lien without being in violation of that section." In essence, the Arbitrator contended that, when filing a lien, "Bedeschi would be required to include information that section 14 explicitly prohibits from disclosing." The Award is the first ever in any jurisdiction in the country that purports to rely on Section 53.286 of the Texas Property Code to void an agreement. There is no record—and Bedeschi has implicitly conceded there is no record—of any court in any jurisdiction supporting the Arbitrator's use of Section 53.286.

Pointedly, the Arbitrator violated clearly established law. Section 53.286 voids only agreements "purporting to *waive* the right to file or enforce any lien . . . ." Tex. Prop. Code § 53.286 (emphasis added). Nothing in the GTC purports to waive Bedeschi's right to file a lien under Chapter 53 and Bedeschi did not identify any such provision. Nor does the language of the GTC conflict with Bedeschi's obligations to provide certain information under the Property Code.

During the Arbitration, Hodel specifically testified that a lien that did not contain the PO or specific contract terms did not violate Section 14.2. *See* Tr. Vol. 3 at 597:13–18. He also testified that other contractors have filed liens that did not attach a PO or GTC terms, and Tesla did not assert that was a violation of confidentiality. *Id*. at 604:11–15. While a lien claimant may attach a copy of a written agreement in support of its claim, the use of "may" shows this is optional and not required. Tex. Prop. Code § 53.054(b). As such, Bedeschi could—and did—file a lien when it initiated a lawsuit in Nueces County, Texas. That right was not waived. Tesla has never once argued that the GTC precluded those filings. And for good reason—it does not.

What Tesla did contend is a separate and distinct challenge to Bedeschi's filings that do not implicate any alleged waiver: Tesla maintains that Bedeschi was not required to, and should not have, filed the entire PO in the public record, as it disclosed far more information than required by law to enforce its lien, and it was that specific disclosure violated Bedeschi's promise to maintain confidentiality. The Arbitrator, however, acting in a novel and draconian fashion, relied on Texas

12

Property Code Section 53.054 to void the parties' agreement. The Arbitrator well exceeded his authority by taking the statute far beyond any previous or supported use to void the parties' express and unambiguous agreement, and his decision should be vacated.

**D.      Unrecoverable Costs, Expenses, and Conditional Appellate Fees Were Awarded.**

Proceeding on an Award riddled with fundamental legal and factual errors, the Arbitrator nonetheless granted attorneys' fees and costs, treating Bedeschi as the "prevailing party." Further compounding his previous errors, the Arbitrator resolved to award Bedeschi  substantial costs that are not recoverable under Texas law or the GTC.

Section 15.7(c) provides that each party bears its own expenses and shares arbitration costs, while allowing the arbitrator discretion to award reasonable costs and fees to the prevailing party. The clause does not authorize expert-witness fees, mediation fees, catering, witness travel, hotel stays, meals, legal research, copying charges, or conditional future fees untethered to services actually incurred.

In Texas, taxable costs are awarded to the prevailing party unless a statute, rule, or court order provides otherwise. *See* Tex. R. Civ. P. 131. "'Costs' usually refers to fees and charges required by law to be paid to the courts or some of their officers, the amount of which is fixed by statute or the court's rules, for example filing and service fees." *Hatfield v. Solomon*, 316 S.W.3d 50, 66 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (quoting *Sterling Bank v. Willard M, L.L.C.*, 221 S.W.3d 121, 124 (Tex. App.—Houston [1st Dist.] 2006, no pet.)). Taxable costs do not include attorney's fees and generally only encompass "relatively minor, incidental expenses" that make up a small portion of a party's total expenses in a case. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012).

Several Texas rules and statutes further clarify what is included in the category of recoverable taxable costs. For example, Section 31.007 of the Texas Civil Practice and Remedies Code allows the following costs in a party's recovery: (1) fees of the clerk and service fees due the county; (2) fees of the court reporter for the original of stenographic transcripts necessarily obtained for use in the suit; (3) masters, interpreters, and guardians ad litem appointed pursuant to these rules and state statutes; and (4) such other costs and fees as may be permitted by these rules and state

13

statutes. Tex. Civ. Prac. & Rem. Code § 31.007(b). Similarly, Rule 203.2 allows a clerk to tax as costs the "deposition officer's charges for preparing the original deposition transcript" but not a copy. Tex. R. Civ. P. 203.2; Tex. R. Civ. P. 140. In other words, not all expenses are recoverable as costs, but the arbitrator rejected these limits imposed by law. The Final Award concluded that "costs" in the GTC was not limited to taxable costs and encompassed all reasonable costs incurred in the arbitration.

In support of his decision, the Arbitrator relied on an inapplicable federal case that does not discuss the limitations on costs and is based on an entirely different set of rules from the ones the parties agreed to enforce. Specifically, the Arbitrator claimed that Texas law authorizes him to impose "any remedy that is permitted under applicable law; provided, however, that the arbitrator may not award any remedies that the parties have agreed in writing may not be awarded in arbitration." That language, however, is not "Texas law," it is very specifically—as described in the single case cited by the Arbitrator—the "Better Business Bureau's Rule of Arbitration 3." *Apollo Companies, Inc. v. Mem'l Vill. Emergency Room, LLC*, No. 14-24-00589-CV, 2025 WL 1232066, at *7 (Tex. App.—Houston [14th Dist.] Apr. 29, 2025, pet. denied).

Plainly, there is no authority allowing the Arbitrator to waver from the technical definition of costs to include nonrecoverable expenses and conditional fees yet unproven as part of the Award. Despite his lack of authority to grant these costs and fees, the Arbitrator awarded them, noting that he is permitted to award "any remedy" under the Better Business Bureau's dispute resolution rule, which he erroneously attributes to "Texas law," while simultaneously failing to recognize that the term "costs" carries a technical meaning defined by various rules and statutes. This is a clear overreach of his authority, and the Award must be vacated. Likewise, the Arbitrator relied on a facially deficient lawyer declaration in awarding conditional appellate fees that plainly did not comply with Texas law.

## CONCLUSION AND PRAYER

The Final Award should be vacated because the Arbitrator exceeded his authority as described herein, the Court also should award Tesla its costs and attorneys' fees incurred in pursuing this Petition, and award Tesla all other relief to which it is entitled.

14

DATED: July 14, 2026

                                  JACKSON WALKER, LLP

                                  By:  _/s/ Stacy Allen_____

                                    STACY ALLEN

                                    Counsel for Petitioner, Tesla, Inc.